IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

THOMAS J. SEIFERT,            )
                              )
           Plaintiff,         )
                              )
     v.                       )   Civil Action No. 16-8-J
                              )
COMMISSIONER OF               )
SOCIAL SECURITY,              )
                              )
           Defendant.         )

O R D E R

AND NOW, this 30th day of March, 2017, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for Disability Insurance Benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401, et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it would have decided the claim differently) (citing Cotter v. Harris,

642 F.2d 700, 705 (3d Cir. 1981)). See also Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986).[1]

---

[1] Plaintiff raises several arguments that the Administrative Law Judge ("ALJ") erred in finding him to be not disabled under the Social Security Act. Some are without legal merit, some are just factually wrong, but none warrant remand of this matter. Instead, the Court finds that substantial evidence supports the ALJ's decision.

The Court will begin with the last issue raised by counsel in Plaintiff's brief, that the ALJ's credibility finding is contrary to law and not supported by substantial evidence because the ALJ allegedly failed to acknowledge Plaintiff's strong work record of 37 years prior to his alleged onset date. Counsel asserts that "[i]t cannot be reasonably disputed that a strong work history is one of the factors an adjudicator must consider when evaluating credibility" and that "it also cannot be reasonably disputed that the ALJ failed altogether to discuss Plaintiff's strong work history as part of the credibility assessment." (Doc. No. 11 at 15). The first of these claims probably cannot reasonably be disputed. The second most assuredly can. Counsel apparently missed the portion of the decision where the ALJ expressly discussed Plaintiff's work history and its impact on his credibility and limitations at significant length. (R. 41-42). Suffice to say, the issue was more than adequately considered by the ALJ.

Continuing to work in reverse, Plaintiff's third argument is that the ALJ did not adequately account for his urinary incontinence with increased urinary frequency by including in Plaintiff's residual functional capacity ("RFC") that he needed ready access to a restroom, but that the need to use the restroom could be accommodated by normal morning, afternoon, and lunch breaks. (R. 37). Rather than pointing to the record evidence that would support a finding that he needs more bathroom breaks, Plaintiff urges the Court to take the commonsensical approach that someone with urinary problems such as his would not be able to use the restroom on such a precise schedule. However, the ALJ actually discussed this issue at some length, pointing out that Plaintiff's treatment for his urinary condition consisted of a single visit to his primary care physician in October 2014, where he was treated for an acute urinary track infection, with no reports of ongoing problems in the months between that treatment and the hearing. (R. 41). He also noted that Plaintiff himself had denied any incontinence during that treatment. (Id.). Accordingly, the ALJ sufficiently considered all of the evidence in determining what limitations needed to be included in the RFC regarding use of the restroom. Substantial evidence supports his finding that ready access, without any necessary additional break time, sufficiently addressed Plaintiff's impairments.

Plaintiff further argues that the limitation to medium work in his RFC is flawed because no medical opinion of record specifically found him to be able to perform that level of work. He contends that, pursuant to Doak v. Heckler, 790 F.2d 26 (3d Cir. 1986), the ALJ was required to rely upon a specific medical opinion in formulating Plaintiff's RFC and in finding him to be able to do medium work. However, as the Court previously explained in Doty v. Colvin, Civ. No. 13-80-J, 2014 WL 29036 (W.D. Pa. Jan. 2, 2014), this Court does not agree with Plaintiff's interpretation of Doak. Rather, the Court has repeatedly held that the decision in Doak does not

provide that an ALJ's RFC findings must be based on a particular medical opinion or that an ALJ may only reject a medical opinion as to functional limitations based on another opinion. Instead, the Third Circuit Court of Appeals, in Doak, held simply that nothing in the record in that case, which consisted of nothing more than testimony and three medical reports, supported the ALJ's finding that the claimant could perform light work. While the Circuit pointed out that none of the three reports contained a suggestion from a physician that the claimant could perform light work, in no way did it suggest that a finding of light work could only be supported if one of the three had expressly opined that the claimant could perform such work, nor did it find that their contrary opinions precluded such a finding *per se*.

Indeed, as this Court explained in Doty, interpreting Doak in the manner suggested by Plaintiff would ignore the fact that "[t]he ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 361 (3d Cir. 2011). See also 20 C.F.R. §§ 404.1527(d)(2), 404.1546(c). Such an interpretation would also ignore the fact that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 Fed. Appx. 6, 11 (3d Cir. 2006). See also Chandler, 667 F.3d at 362 (holding that each fact incorporated into the RFC need not have been found by a medical expert). As the Circuit Court explained in Titterington, "[s]urveying the medical evidence to craft an RFC is part of an ALJ's duties." 174 Fed. Appx. at 11. Consistent with this later case law, Doak does not prohibit the ALJ from making an RFC assessment even if no doctor has specifically made the same findings. See Hayes v. Astrue, Civ. No. 07-710, 2007 WL 4456119, at *2 (E.D. Pa. Dec. 17, 2007). The Third Circuit, in Doak, did nothing more than make a substantial evidence finding in light of the record of the case and did not purport to create a rule that an RFC determination must be based on a specific medical opinion, and subsequent Third Circuit case law confirms this understanding. See also Mays v. Barnhart, 78 Fed. Appx. 808, 813 (3d Cir. 2003); Cummings v. Colvin, No. 1:14-cv-251-TFM, 2015 WL 4092321, at **5-6 (W.D. Pa. July 7, 2015); Carter v. Colvin, Civ. No. 2:14-1498, 2015 WL 1866208, at *10 n.3 (W.D. Pa. Apr. 23, 2015); Goodson v. Colvin, Civ. No. 13-01719, 2014 WL 5308021, at *3 (Oct. 16, 2014).

Of course, in any event, substantial evidence must support an ALJ's findings as to the claimant's RFC. Here, however, substantial evidence does support the ALJ's findings. The ALJ thoroughly discussed all of the evidence, including Plaintiff's own subjective claims (which, contrary to Plaintiff's assertion, did not constitute the only evidence in the record regarding his limitations); the objective diagnostic and clinical findings; Plaintiff's benign treatment history, including his refusal of more advanced treatment such as physical therapy; and the fact that Plaintiff's reported symptoms have been sporadic and have improved with medication. (R. 38-39, 40-41). He explained that Plaintiff's physical conditions could be accommodated by a limitation to medium work with numerous other postural, reaching, and environmental limitations. (R. 41). In light of his careful review of the evidence, and the fact that no medical source opined that Plaintiff had more severe physical limitations, substantial evidence supports the ALJ's finding.

Perhaps Plaintiff's primary argument is that the ALJ erred in finding that Plaintiff could perform the jobs identified by the vocational expert ("VE") – polisher, linen room attendant, and hand packer – at the hearing. Plaintiff claims that the ALJ was required to resolve the conflict between the VE's testimony that he could perform these jobs and the requirements of these positions pursuant to the Dictionary of Occupational Titles ("DOT"), which he alleges were incompatible with the reading, writing, and mathematical limitations contained in his RFC. The Court disagrees for various reasons and finds that the ALJ properly relied on the testimony of the VE in finding that Plaintiff could perform jobs that exist in significant numbers in the national economy.

It is important to be clear and accurate as to the ALJ's RFC findings, the VE's testimony, and the requirements for the positions of polisher, linen room attendant, and hand packer in the DOT. Plaintiff characterizes the ALJ as having found that he was limited to work that requires "<u>no ability</u> to read, write, or perform math." (Doc. No. 11 at 1 n.1)(emphasis in the original). This is not, however, what the ALJ found. At no point did the ALJ find that Plaintiff had no ability to read, write, or perform mathematics at all; rather, he included a restriction in the RFC that Plaintiff could "perform no work involving reading, writing, or arithmetic." (R. 37). He expressly found that the record did not fully support Plaintiff's allegations regarding his limitations in these areas. (R. 39). Accordingly, the ALJ did not find that Plaintiff was illiterate or incapable of performing any mathematics, but only that he was limited to jobs not "involving" these skills. Based on this finding, and on the ALJ's hypothetical question, the VE testified that a person with Plaintiff's RFC could perform work as a polisher, DOT 761.684-026; a linen room attendant, DOT 222.387-030; and a hand packer, DOT 920.587-018. (R. 82-84). The ALJ asked the VE whether this testimony was consistent with the DOT, and the VE stated that it was. (R. 84).

As noted, these jobs are all listed in the DOT. "The DOT is a vocational dictionary that lists and defines all jobs available in the national economy and specifies what qualifications are needed to perform each job." <u>McHerrin v. Astrue</u>, Civ. No. 09-2035, 2010 WL 3516433, at *3 (E.D. Pa. Aug. 31, 2010) (citing S.S.R. 00-4p, 2000 WL 1898704 (Dec. 4, 2000)). Among other qualifications, jobs in the DOT are assigned a General Educational Development ("GED") level, which includes a reasoning, mathematical, and language development level. <u>See</u> DOT, App. C, § III. The GED generally "embraces those aspects of education (formal and informal) which are required of the worker for satisfactory job performance." <u>Id.</u> The three component parts of the GED – reasoning development ("RD"), mathematical development ("MD"), and language development ("LD") – are each rated on a scale from 1 to 6, with 1 representing the lowest degree of required development. As Plaintiff points out, two of the positions which the VE testified, and the ALJ found, he could perform – polisher and hand packer – have MD and LD levels of 1, while the linen room attendant position has MD and LD levels of 2. <u>See</u> DOT §§ 761.684-026, 920.587-018, and 222.387-030. (Because, as the Court will discuss later, it need not make any finding as to the linen room attendant position, it will focus its analysis on the other two positions.)

The Components of the Definition Trailer contained in Appendix C of the DOT provides that an MD level of 1 includes the ability to "[a]dd and subtract two digit numbers; [m]ultiply

4

and divide 10's and 100's by 2, 3, 4, 5; [and] [p]erform the four basic arithmetic operations with coins as part of a dollar [and] [p]erform operations with units such as cup, pint, and quart; inch, foot, and yard; and ounce and pound." It further provides that an LD level of 1 includes the ability to "[r]ecognize meaning of 2,500 (two- or three-syllable) words, [r]ead at [the] rate of 95-120 words per minute, and [c]ompare similarities and differences between words and between series of numbers; [p]rint simple sentences containing subject, verb, and object, and series of numbers, names, and addresses; and [s]peak simple sentences, using normal word order, and present and past tenses." DOT, App. C, § III. As noted, this represents the lowest level of mathematical and language development for any job included in the DOT.

Having clarified the record, the Court must then determine whether there is, in fact, an inconsistency between the descriptions of these positions in the DOT and the VE's testimony that Plaintiff could perform those jobs based on his RFC. The Court finds that there is not. Other courts have noted that the DOT seems to create a literacy requirement and have emphasized that common sense, as well as the medical-vocational guideline section of the regulations (commonly referred to as the "grids"), 20 C.F.R., pt. 404, subpt. P, app. 2, demonstrate that many illiterate people can and do work. See Rowe v. Astrue, Civ. No. 07-348-JMH, 2008 WL 1711538, at *3 (E.D. Ken. Apr. 10, 2008); Pacheco v. Colvin, 83 F. Supp. 3d 1157, 1167 (D. Col. 2015); Rivera v. Comm'r of Soc. Sec., No.3:13-cv-772, 2014 WL 4956224, at *16 (N.D. Ohio Sept. 30, 2014). Indeed, it does seem to make little sense to read the DOT as essentially precluding those without language and math skills from *all* positions, even those with the lowest math and language requirements, when common experience shows to the contrary. However, for purposes of this Order, the Court will assume that the DOT means what it says, and that even the least demanding positions in regard to math and language development require a certain degree of literacy.

Regardless, the Court finds no conflict in this case between the VE's testimony and the DOT. As mentioned above, although Plaintiff implies that he is limited to jobs requiring ***no ability*** to read, write, or perform math, this is not the case. The ALJ did not find Plaintiff to be lacking the ability to read, write, or perform mathematics entirely, nor did he find that Plaintiff could only do jobs not requiring those abilities. Instead, he found that Plaintiff could "perform no work involving reading, writing, or arithmetic." (R. 37). This distinction is a subtle but important one.

Although Plaintiff equates the GED's requirements with the actual jobs' duties, this is not entirely accurate. "GED does not describe specific mental or skill requirements of a particular job, but rather describes the general educational background that makes an individual suitable for the job." Pacheco, 83 F. Supp. 3d at 1167 (quoting Anderson v. Colvin, 514 Fed. Appx. 756, 764 (10th Cir. 2013)). In other words, GED discusses the background an individual must have to perform the positions generally, not the actual tasks of the jobs themselves. Therefore, although an LD of 1 would require a small amount of prior language development, it would not indicate that the jobs of polisher or hand packer "involve" reading or writing. Likewise, an MD of 1 may require a certain limited mathematical background, but does not necessarily indicate that math is "involved" with those positions. The actual descriptions of those jobs do not demonstrate that reading, writing, or mathematics are part of the duties of either. For example, certainly,

weighing or labeling something may involve some background language and mathematical development, but such activities do not necessarily involve reading, writing, or doing math. In light of the fact that these two positions are classified as having the lowest GED language and mathematical development requirements, and in light of the descriptions of the actual duties of these jobs, it cannot be said that the VE's testimony that Plaintiff could perform these jobs conflicted with the DOT.

Regardless, even assuming that there was such a conflict, remand would not be warranted. Although ALJs are required to identify and obtain a reasonable explanation for any conflicts between a VE's testimony and information in the DOT, the presence of such inconsistencies does not mandate remand, so long as "substantial evidence exists in other portions of the record that can form an appropriate basis to support the result." Rutherford v. Barnhart, 399 F.3d 546, 556-57 (3d Cir. 2005)(quoting Boone v. Barnhart, 353 F.3d 203, 209 (3d Cir. 2004)). In Zirnsak v. Colvin, 777 F.3d 607 (3d Cir. 2014). The Third Circuit explained that remand is not necessary in cases involving such inconsistencies where the ALJ discharged his or her duty to ask the VE whether the testimony was consistent with the DOT on the record and where the following factors were met: (1) the claimant did not seriously argue an inability to perform the jobs in question and the record supports a finding that he or she can perform such work; (2) the claimant did not point out the conflict at the hearing; and (3) the challenged jobs were only representative examples. See id. at 618-619.

The situation here is much the same as in Zirnsak. First, as noted above, the ALJ did, in fact, ask the VE if his testimony was consistent with the DOT, and the VE responded that it was. (R. 84). Further, here, as in Zirnsak, Plaintiff has made no real argument that he could not perform the work of a polisher or hand packer, and, as discussed herein, the ALJ considered the medical evidence and its impact on Plaintiff's functional limitations at great length. As discussed, the ALJ did not find Plaintiff to have no language or math ability, and the record confirms that he can read and spell at a second grade level and perform math at a third grade level. (R. 289). He was also able to perform a number of subtraction exercises during his consultative examination. (R. 278). More importantly, Plaintiff had worked at several prior jobs as a skilled tradesperson for 37 years with the same language and mathematical limitations that he has now. Indeed, his prior position as an arc welder with PVS Coal had an MD level of 4 and an LD level of 3, see DOT § 810.384-014, which is ordinarily indicative of a far more extensive reading and mathematical background. His position with the Commonwealth of Pennsylvania as a welding machine tender had both an MD and LD level of 1, the same as the jobs which the ALJ found that he could perform. The fact that Plaintiff actually performed jobs with equal, and often much greater, MD and LD levels for decades supports that he can, in fact, do the work of a polisher or hand packer. See Pacheco, 83 F. Supp. 3d at 1167 ("Finally it appears that the jobs plaintiff performed in the past had GED Language Development levels as high as 2, demonstrating that such requirements in themselves do not preclude plaintiff from working, even if she is illiterate."). Moreover, Plaintiff did not raise any inconsistencies at the hearing. Finally, the jobs offered by the VE were expressly offered as "examples." (R. 83). Accordingly, there is no basis for remanding the case based on this argument. Because the Court has found that substantial evidence supports the finding that Plaintiff could perform the work of two of the three

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 10) is DENIED and Defendant's Motion for Summary Judgment (document No. 12) is GRANTED.

                                                  s/Alan N. Bloch
                                                  United States District Judge

ecf:         Counsel of record

---

positions found by the ALJ, it does not reach the issue of whether he could also have performed the third.

Accordingly, for all of the reasons stated herein, the Court finds that substantial evidence supports the ALJ's decision and affirms.